# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,       :

   Employer-Below/Appellant,   :    C.A. No. K18A-04-002 JJC

               :    In and for Kent County

v.               :

               :

NICHOLAS GATES,       :

               :

   Claimant-Below/Appellee.    :

Submitted: September 17, 2018
Decided: November 16, 2018

## MEMORANDUM OPINION AND ORDER

*Upon Consideration of Appellant's Appeal from Decision of*
*Industrial Accident Board –* **AFFIRMED**

Walt F. Schmittinger, Esquire, Schmittinger and Rodriquez, Dover, Delaware for Claimant Below/Appellee.

John J. Klusman, Jr., Esquire, Tybout, Redfearn and Pell, Wilmington, Delaware for Employer-Below/Appellant.

**Clark, J.**

Appellant State of Delaware (hereinafter "State" or "Employer") appeals an adverse decision by the Industrial Accident Board (hereinafter "the IAB" or "the Board") in favor of Mr. Nicholas Gates (hereinafter "Mr. Gates"). Mr. Gates was a road maintenance equipment operator for the State who suffered injuries in an accident while responding to an emergency overtime call. At the hearing, the State alleged that its Merit Rule 4.16 fixed the time of Mr. Gates's accident to be outside the course and scope of his employment because of the going and coming rule. The IAB disagreed and found that Mr. Gates suffered a compensable work injury because it found him to have been due compensation from the State at the time of the accident pursuant to his employment agreement with the State.

Here, the Court holds that the Board did not commit legal error in looking to the course of conduct between the parties when determining the terms of Mr. Gates's employment contract. Furthermore, the Court finds that the Board's decision that Mr. Gates's travel at the time of the accident was work related and compensable was supported by substantial evidence. For these reasons, and the reasons that follow, the Board's decision is **AFFIRMED.**

## I. FACTS OF RECORD AND PROCEDURAL BACKGROUND

On November 29, 2016, Mr. Gates injured his head and neck in a motor vehicle accident. He alleged that these injuries were compensable because they were work related. The Employer disputed his claim, arguing that Mr. Gates was not acting within the course and scope of his employment at the time of the motor vehicle accident.

The IAB held its hearing on March 15, 2018, and concluded final deliberations on April 14, 2018. It considered testimony from Mr. Gates and Ms. Brittany Ford (hereinafter "Ms. Ford"), a human resource representative who testified on the Employer's behalf. It also considered documents submitted by the

2

Employer regarding overtime service, stipulated facts, and competing medical expert testimony.

At the hearing, Mr. Gates testified that he was twenty-four years old at the time of the motor vehicle accident and had worked for the State for four months as an equipment operator. Primarily, his job duties included road maintenance. Mr. Gates's regular hours of employment were 7:00 a.m. to 3:00 p.m., Monday through Friday. He was also classified as essential personnel and drew overtime pay for work outside his regular work hours. The Employer referred to such overtime as "call-back" time.

Mr. Gates testified that the Employer frequently called him back for work after hours. It paid him a minimum of four hours overtime even if he only worked one hour. At the time of the accident, crew leaders recorded the regular working hours of employees, while employees recorded their own call-back hours. Mr. Gates also testified that he started recording his call-back time from the moment he received the call-back and stopped recording his time when he completed the job. On the day of the accident, Mr. Gates received a phone call between 3:30 and 3:45 p.m., after his shift had ended at 3:00 p.m. The Employer directed him to respond to a road side accident after going to the Employer's worksite to retrieve equipment. During his travel to the yard to retrieve his equipment, Mr. Gates suffered the injuries at issue in a motor vehicle accident.

The Employer's representative, Ms. Ford, testified that State Merit Rule 4.16 prescribes that call-back pay is calculated "from the time the employee arrives at the designated worksite and begins work until the time the employee has completed all call-back requests and has left the worksite." She explained the Employer's position that Merit Rule 4.16 formed part of Mr. Gates's employment agreement. She also testified that it and other merit rules were referenced in the one-hour orientation provided to all new employees. She acknowledged, however,

3

that the State did not provide physical copies of the Merit Rules to new employees. Rather, it merely referenced the Merit Rules during employee orientations. Furthermore, she admitted that the call-back policy was not discussed during the new employee orientation. Instead, she acknowledged that supervisors were responsible for explaining the call-back policy to new employees.

Mr. Gates testified that he did not receive formal training regarding time sheet submission, but was "groomed" by older and more experienced employees who told him that the start time for overtime began at the time he received the call-back. He had been called-back many times prior to the accident and had, consistent with such instruction, submitted multiple time sheets for approval to the secretary without issue. On all of these time sheets, he recorded his start time from the moment he received the call. He testified that for the first time, on the day of the accident, he was not paid overtime.

The Board found, based on the totality of the circumstances, that Mr. Gates acted within the course and scope of his employment at the time of his motor vehicle accident. In so finding, it concluded that there was a reasonable causal connection between the injury Mr. Gates suffered and his employment duties. The Board noted that the Employer required Mr. Gates to respond to call-backs and his failure to do so would result in termination. The Board also found Mr. Gates's testimony credible and concluded that his trip to the worksite on his way to his overtime job was, under the totality of the circumstances, within the course and scope of his employment. Alternatively, the Board found that even if Mr. Gates's action on the day of the accident did not fall within the scope of his employment agreement, he would qualify under the special errand exception to the going and coming rule at the time of his injury.

Thereafter, the State appealed the matter to this Court. In its appeal, the State contends that the Board committed an error of law by concluding that Mr.

4

Gates's injury was a compensable injury under the Worker's Compensation Act. It also contends that the Board's decision was not supported by substantial evidence.

## II. STANDARD OF REVIEW

This Court's appellate review of an IAB decision is limited to determining whether the Board's decision was supported by substantial evidence and whether the Board committed an error of law.[1] Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] On appeal, the Court views the facts in the light most favorable to the prevailing party below.[3] Moreover, the Court does not weigh the evidence, determine questions of credibility, or make its own factual findings.[4] Absent any errors of law, which are reviewed *de novo*, a decision of the IAB supported by substantial evidence will be upheld unless the Board abused its discretion.[5] The Board abuses its discretion when its decision exceeds the bounds of reason in view of the circumstances.[6]

## III. ANALYSIS

Here, the Court finds no error of law in the Board's decision. A claimant is entitled to worker's compensation benefits for personal injury or death when that injury is sustained "by accident arising out of and in the course of employment."[7]

---

[1] *Bullock v. K-Mart Corp.*, 1995 WL 339025, at *2 (Del. Super. May 5, 1995) (citing *General Motors v. Freeman*, 164 A.2d 686, 689 (Del. 1960)).

[2] *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).

[3] *Chudnofsky v. Edwards*, 208 A.2d 516, 518 (Del. 1965).

[4] *Bullock*, 1995 WL 339025, at *2 (*citing Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965)).

[5] *Hoffecker v. Lexus of Wilmington*, 2012 WL 341714, at *1 (Del. Feb. 1, 2012).

[6] *Id.*

[7] *Spellman v. Christiana Care Health Serv.*, 74 A.3d 619, 623 (Del. 2013)(quoting 19 *Del. C.* § 2304).

Determining if an injury arises out of and in the course of employment is a highly factual inquiry that is resolved using a totality of the circumstances test.[8] "[A]rising out of" and "in the course of employment" are two distinct concepts and must be established separately.[9] "In the course of employment" refers to the time, place and circumstances of the employee's injury,[10] whereas "arising out of the employment" refers to the origin and cause of the injury.[11]

From the Delaware Worker's Compensation Act,[12] the courts have derived the doctrine commonly referred to as the going and coming rule.[13] Pursuant to the going and coming rule, injuries resulting from accidents during an employee's regular travel to and from work are non-compensable.[14]

The Delaware Supreme Court recently clarified the two-step analysis for determining whether an employee's injury falls within the course and scope of their employment as opposed to being not compensable pursuant to the going and coming rule.[15] First, the Board must focus on the employment agreement between the employer and employee to see if it "resolves the issue of whether the injury arose out of and occurred in the course of the [employee's] employment."[16] If the employment contract gives the necessary guidance, the analysis stops there.[17] If,

---

[8] *Id.* (citing *Histed v. E.I. Du Pont de Nemours & Co.,* 621 A.2d 340, 345 (Del. 1993)).
[9] *Id.*
[10] *Id.* (citing *Tickels v. PNC Bank,* 703 A.2d 633, 637 (Del. 1997)).
[11] *Id.*
[12] *See* 19 *Del. C.* § 2301 (18) a. (providing that "[p]ersonal injury sustained by accident arising out of and in the course of the employment [s]hall not cover an employee except while the employee is engaged in, on or about the premises where the employee's services are being performed, which are occupied by, or under the control of, the employer ... or while the employee is engaged elsewhere in or about the employer's business where the employee's services require the employee's presence as part of such service at the time of the injury...").
[13] *Spellman,* 74 A.3d at 623 (citing *Histed,* 621 A.2d at 343).
[14] *See Histed,* 621 A.2d at 343 (providing that the rationale for this doctrine is that during an employee's daily commute, they face the same risks as the general public).
[15] *Spellman,* 74 A.3d at 625.
[16] *Id.*
[17] *Id.*

however, the employment agreement does not resolve the dispute, the fact finder must look to a "veritable potpourri of exceptions."[18] The exception to the going and coming rule most arguably applicable in this instance is the special errand exception. Under the special errand exception, the going and coming rule does not apply when the accident occurs during a work-related trip that, because of the special inconvenience, hazard or urgency of making the trip, rises to the level of a special errand that is integral to the work itself.[19]

Applying *Spellman's* two-step test, the Court must first examine the employment agreement between the parties. Employment agreements may be written, but are also often based upon oral terms and the course of conduct between the parties.[20] As the Board correctly noted, the Employer presented no written employment contract or agreement between it and Mr. Gates. Rather, it presented only a written policy outlined in the State's Merit Rules. The Board found no evidence suggesting that Mr. Gates received a copy of the Merit Rules. Instead, the Employer merely referenced the Merit Rules during his new employee orientation. The Board found that the Employer provided him with only an employee handbook and information regarding where to find the Merit Rules.

Employee handbooks, such as the one Mr. Gates received, are generally not considered employment contracts because they lack the traditional prerequisites of a contract.[21] Delaware courts have found that an employee handbook can supply

---

[18] *See Spellman v. Christiana Care Health Serv.*, 2012 WL 1980341, at *1 (Del. Super. May 17, 2012) (exceptions to the going and coming rule include the special errand exception, the personal comfort exception, and the exception where a personal trip has both a personal and professional purpose) *and Spellman*, 74 A.3d at 624 (noting further exceptions to the going and coming rule including the compensation exception, the premises exception, and the exception for traveling employees).

[19] *Spellman*, 74 A.3d at 624.

[20] *Kerly v. Battaglia*, 1990 WL 199507, at *2 (Del. Super. Nov. 21, 1990).

[21] *See* 27 Am. Jur. 2d *Employment Relationship* § 10 (2014) (recognizing generally that employee handbooks are not considered employment contracts, unless it is clearly indicated so, because employment handbooks are a "unilateral statement of company policies and procedure,

7

terms to an otherwise unwritten contract between employers and employees if the parties intended it to do so.[22] To determine if a provision contained in an employee manual is part of the employment contract, "the trier of fact must examine the language used in the manual and any oral representations or course[s] of conduct [that] support a reasonable reliance on the part of the employee."[23] Likewise, policy provisions such as Merit Rule 4.16 may supply terms to or outline an employment agreement if the parties so intended.

Here, however, the Board found that Merit Rule 4.16 did not add a term to Mr. Gate's employment agreement. In reviewing the record to evaluate whether substantial evidence supported the Board's decision, the Court finds that it contains Ms. Ford's testimony that the Merit Rules were "part of basically [Mr. Gates's] contract of hire," that the Merit Rules were "referenced" during the new employee orientation, and that the Merit Rules were "likely referenced" in a welcome packet that employees received.

The Board articulated in its decision, however, that as the finder of fact, it found Mr. Gates's testimony to be more credible regarding the issue. In relying on his testimony, it found that the parties' course of conduct regarding call-back time was different than that prescribed in the particular Merit Rule at issue. Moreover, Merit Rule 4.16, by its very language, qualifies itself by providing that it constitutes only "Guidelines and *Recommended* Procedure[s]" for call-back pay. The Court's reliance on the parties' actual course of conduct in assessing the terms of his employment contract was supported by the record.

In light of this evidentiary finding, it was not legal error for the Board to find the injuries to be compensable. As the Delaware Supreme Court held in *Histed v. E.I. DuPont de Nemours & Co.*, "a compensated trip is within the course and scope

---

because its terms are not bargained for, and because no mutual consent occurs").
[22] *Kerly,* 1990 WL 199507, at *2.
[23] *Id.*

of employment."[24] In Mr. Gates's case, the employment agreement provided that the trip at issue was compensated. It therefore follows that Mr. Gates's injuries are compensable work injuries.

In reviewing the Board's decision, the Court also finds that the Board correctly recognized that the *Spellman* two-step test should not permit an employer to avoid compliance with the Worker's Compensation Act as excluding by policy or rule that which should be compensable based upon a common part of the employment.[25] The General Assembly enacted the Worker's Compensation Act to be a remedial law and it should be "interpreted liberally to fulfill its intended compensation goal."[26] Coverage must not be denied "wherever the injuries can fairly be characterized as arising out of the employment."[27]

In this instance, the Board believed Mr. Gates's testimony that he was instructed by his senior co-workers to start recording his call-back time from the moment he received the call-back. Mr. Gates adopted this practice and submitted multiple time sheets while following this practice. The Board also believed his testimony that his supervisors had never corrected him for following this procedure. The Board permissibly found that he was furthering the Employer's business at the time of the accident. Had he not received the call-back, he would not have been in that specific location at the time of the accident. Accordingly, the Board's finding that Mr. Gates's trip to retrieve equipment to respond to an after hours emergency call arose out of and in the course of his employment was supported by substantial evidence.

---

[24] *Histed*, 621 A.2d at 345.

[25] *See* 19 *Del. C.* § 2305 (providing that "[n]o agreement, rule, regulation or other device shall in any manner operate to relieve any employer or employee in whole or in part from any liability created by this chapter, except as specified in this chapter.").

[26] *Histed*, 621 A.2d at 342.

[27] *Collier v. State*, 1994 WL 381000, at *2 (Del. Super. Jul. 11, 1994).

The State relies on *State v. DeSantis*[28] in support of its argument that Mr. Gates's injuries were not compensable. That case is properly distinguished. In *DeSantis*, the plaintiff was injured on his way home from an after hours function that was not included as a compensable time pursuant to his employment contract.[29] Mr. Gates on the other hand was injured on his way to the worksite to retrieve equipment and to respond to an accident. As the Board found, this task included activities that, based upon the course of conduct between the parties, included time for which he received compensation. The court in *DeSantis* found that the terms of the employment contract expressly stated that the claimant would *not* be compensated for travel time or mileage for travel between home and work.[30] To this effect, there was no dispute that the employment contract at issue in *DeSantis* did not include paid travel time.[31] In the case at hand, however, the Board made the factual finding that the terms of Mr. Gates' employment contract, though not in writing, provided that Mr. Gates's injury occurred while he was in the course of his employment and that it arose out of his employment because his employment agreement provided that he would be compensated for that time.

The State further argues that the Board's interpretation of *Spellman* would enable any employee to disregard the terms of their contract as long as they did so with regularity. The Court disagrees. As the Board permissibly concluded after considering the totality of the circumstances, Merit Rule 4.16 did *not* provide a term of his employment agreement.

A totality of the circumstances review, by its very nature, is an intensely factual matter. Here, the Board permissibly found that under the totality of the circumstances, Mr. Gates's employment contract fixed, as compensated, the time

---

[28] *State v. DeSantis*, 2017 WL 4675765, at *3 (Del. Super. Oct. 17, 2017).
[29] *Id.* at *1.
[30] *Id.* at *3.
[31] *Id.*

10

he traveled to the worksite to retrieve equipment after receiving his call-back. Given the substantial evidence supporting that finding, the Court elects not to address the Board's alternative ruling that if the employment agreement did not address the issue, the secondary default presumption regarding special errands requires the same result.

## IV. CONCLUSION

For the reasons discussed, the Board's decision in this matter is **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ Jeffrey J Clark
Judge

JJC/dsc
oc:    Prothonotary

11